UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                               )
TAHAR AHMED,                   )
                               )    CIVIL ACTION
                Plaintiff,     )    NO. 10-12069-WGY
                               )
        v.                     )
                               )
JANET NAPOLITANO, Secretary, U.S. )
Department of Homeland Security, )
                               )
                Defendant.     )
                               )
_____)
```

MEMORANDUM & ORDER

YOUNG, D.J.                                    December 17, 2012

## I.    INTRODUCTION

Tahar Ahmed ("Ahmed") brings this action against Janet
Napolitano ("Napolitano"), Secretary of the U.S. Department of
Homeland Security, claiming that he was denied a promotion to a
deportation officer position based on his race (Arab), national
origin (Algeria), and religion (Muslim) in violation of Title VII
of the Civil Rights Act of 1964.  Napolitano now moves for
summary judgment, arguing that Ahmed was not an applicant when
three other white males[1] were recommended for the promotion at

---

[1] Four people were selected for the position.  Pl. Tahar
Ahmed's Opp'n Def. Napolitano's Mot. Summ. J.; & Pl.'s Rule 56.1
Concise Statement Additional Material Facts; & Mem. Law ¶ 188,
ECF No. 33.  One of the four selectees, Priscilla
Ward-Altamirano, was Hispanic; the parties limit their arguments
to the three white males selected.  See id.; Decl. Pl.'s Opp'n

issue and thus cannot state a <u>prima facie</u> case of discrimination.
Alternatively, Napolitano argues that even if Ahmed was an
applicant, there is no evidence of pretext.

### A.   Procedural Posture

Ahmed filed this suit on November 30, 2010.  Compl., ECF
No. 1.  On August 5, 2011, Ahmed amended his complaint.  Am.
Compl., ECF No. 17.  On April 16, 2012, Napolitano moved for
summary judgment and accompanied with the motion a memorandum of
law and a statement of material facts pursuant to Local Rule
56.1.  Def.'s Mot. Summ. J., ECF No. 27; Def.'s Mem. Law Supp.
Mot. Summ. J. ("Def.'s Mem."), ECF No. 28; Local Rule 56.1
Statement Undisputed Material Facts Supp. Def.'s Mot. Summ. J.
("Def.'s SOF"), ECF No. 29.  Ahmed opposed the motion on May 8,
2012.  Pl. Tahar Ahmed's Opp'n Def. Napolitano's Mot. Summ. J.; &
Pl.'s Rule 56.1 Concise Statement Additional Material Facts; &
Mem. Law ("Pl.'s Opp'n"),[2] ECF No. 33.  Napolitano filed a reply
on May 14, 2012.  Def.'s Reply Pl.'s Opp'n Def.'s Mot. Summ. J.
("Def.'s Reply"), ECF No. 45.

---

Def.'s Mot. Summ. J., Ex. K, Aff. Bruce Chadbourne 4, ECF No.
40-1.

[2] Even though Ahmed's response to Napolitano's statement of
undisputed facts is incorporated into Ahmed's opposition, in this
memorandum, Ahmed's response will be cited as "Pl.'s Resp. SOF."

**B.    Facts[3]**

Ahmed has been employed by U.S. Immigration and Customs Enforcement ("ICE") as an Immigration Enforcement Agent since September 7, 2003.  Pl.'s Resp. SOF ¶ 4.  Throughout his entire employment with ICE, Ahmed has worked in the Criminal Alien program.  Id. ¶¶ 4-5.  Prior to working for ICE, Ahmed was an auxiliary police officer for the Cambridge Police Department, where he performed traffic details and patrolled public buildings and elderly housing.  Def.'s SOF ¶ 59.  He also worked as a security officer at a hospital, as a taxicab driver, and as an assistant manager at a bank.  Id.

Ahmed is a North African Arab and an Algeria-born Muslim. Pl.'s Resp. SOF ¶ 2.

In the summer of 2009, the U.S. Department of Homeland Security posted a deportation officer position, GS-1801-09/12, via a job vacancy announcement.  Def.'s SOF ¶ 5.  The vacancy included multiple grades, in particular, GS-09, GS-11, and GS-12, and multiple duty locations.  Id.  While working in the Criminal

---

[3] For the purpose of this summary judgment motion, the factual summary presented herein consists of undisputed facts and disputed facts construed in the light most favorable to Ahmed, the non-moving party.  The Court reviews the record as a whole, but "it must disregard all evidence favorable to the moving party that the jury is not required to believe."  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 151 (2000).  Accordingly, on any issue on which the moving party bears the burden of proof, the Court will disregard evidence in favor of the moving party - even if uncontradicted - that the jury would be free to disbelieve.  See id.

Alien program was not a formal prerequisite of the position, it provided beneficial experience for filling the vacant position. Id. ¶ 9.

The open period to submit applications online for the position was "Wednesday June 10, 2009 to Tuesday, July 28, 2009." Pl.'s Resp. SOF ¶ 10.   The announcement also noted:

> If needed, the first cut-off for receipts of applications will be June 24, 2009.   Additional cut-off dates maybe [sic] established throughout the open period of the announcement.   Only those applications received prior to the cut-off dates will be considered.   Applicants are encouraged to apply early in order to maximize their opportunity for consideration . . . .

Def.'s SOF ¶ 10.

On July 13, 2009, the Field Office requested certificates of qualified applicants for the position, and these referral certificates were issued for each series and grade.   Id. ¶ 14. Assistant Field Office Director John Lawler ("Lawler") was the recommending official for the deportation officer position.   Id. ¶ 16.   On July 27, 2009, Lawler recommended three white male individuals for the position: Anthony Ciulla ("Ciulla"), Richard Lenihan ("Lenihan"), and Daniel Shepherd ("Shepherd").   Id. Agreeing with this recommendation, the supervisor, Deputy Field Director James Martin ("Martin"), forwarded the recommendation to the selecting official, Boston Field Office Director Bruce Chadbourne ("Chadbourne").   Id. ¶ 18.

Ahmed applied for the position on Tuesday, July 28, 2009, at 3:01 PM, which was the day the vacancy announcement closed.  Id. ¶ 17.  On August 26, 2009, the Boston Field Office made a second request for certificates of qualified applicants, and Ahmed's name appeared on the referral certificates for the GS-09 and GS-11 grades.  Id. ¶ 19.  Chadbourne announced the promotion of the three selectees, Ciulla, Lenihan, and Shepherd (the "three selectees"), on September 8, September 28, and October 5, 2009, via email.  Id. ¶ 20.  On October 1, 2009, the Personnel Office notified Ahmed that he was not selected for the deportation officer position.  Pl.'s Resp. ¶ 20.

### C.   Federal Jurisdiction

This Court has federal-question jurisdiction pursuant to 42 U.S.C. § 1331 arising from the federal claim under 42 U.S.C. § 2000e.

## II.   ANALYSIS

### A.   Legal Standard for Summary Judgment

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).  An issue of fact is "genuine" if there exists a

sufficient evidentiary basis on which the trier of fact could find for the non-moving party.  Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if it will affect the outcome of the case under the applicable law.  Id.

In analyzing whether a genuine issue of material fact exists, this Court must review the record in the light most favorable to Ahmed, the non-moving party, and take all inferences in his favor.  Id. at 255.  Ahmed cannot, however, rely on conclusory allegations, conjecture, and speculation, but must affirmatively "set forth specific facts showing that there is a genuine issue for trial."  Id. at 248.

**B.   Ahmed's Claim of Discrimination on the Basis of His National Origin, Race, and Religion**

In his first and only cause of action, Ahmed claims that Napolitano discriminated against him on the basis of his Muslim religion, his race as an Arab, and his national origin as an Algerian.  Am. Compl. ¶ 32.  He contends that Napolitano denied him promotion opportunities for which he was qualified and in which he had expressed an interest.  Id. ¶¶ 6, 8.  In essence, Ahmed claims two instances of discrimination regarding the deportation officer position at issue here: discrimination by the selecting officer Chadbourne, who selected three white males for the position rather than Ahmed; and discrimination by the recommending officers Lawler and Martin, which he calls "indirect discrimination."

To survive Napolitano's motion for summary judgment, Ahmed must withstand the three-part, burden-shifting analysis first established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973).  First, Ahmed must establish a prima facie case of racial discrimination.  In a failure-to-promote claim, the plaintiff must prove he (i) is a member of a protected class who (ii) was qualified for an open position for which he applied but (iii) was rejected (iv) in favor of someone possessing similar qualifications.  Gu v. Bos. Police Dep't, 312 F.3d 6, 11 (1st Cir. 2002); see also Rathbun v. Autozone, Inc., 361 F.3d 62, 71 (1st Cir. 2004).

Second, if Ahmed can demonstrate a prima facie case, the burden of production shifts to Napolitano to provide a legitimate, nondiscriminatory reason for the adverse employment action.  Rathbun, 361 F.3d at 71.

Third, should Napolitano make such a showing, the presumption of unlawful discrimination vanishes and the burden falls back on Ahmed to prove by a preponderance of the evidence that Napolitano's stated reason was merely a pretext for discrimination.  St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993).  That is to say, Ahmed must show there was "more than an unusual act; [pretext] means something worse than a business error; 'pretext' means deceit used to cover one's tracks." Ronda-Perez v. Banco Bilbao Vizcaya Argentaria-P.R., 404 F.3d 42,

7

45 (1st Cir. 2005) (quoting <u>Kulumani</u> v. <u>Brlue Cross Blue Shield</u> <u>Ass'n</u>, 224 F.3d 681, 684 (7th Cir. 2000)).  At this stage, Ahmed "must produce evidence to create a genuine issue of fact with respect to two points: whether the employer's articulated reason for its adverse action was a pretext and whether the real reason was . . . discrimination." <u>Quinones</u> v. <u>Buick</u>, 436 F.3d 284, 289-90 (1st Cir. 2006) (quoting <u>Thomas</u> v. <u>Eastman Kodak Co.</u>, 183 F.3d 38, 62 (1st Cir. 1999)) (internal quotation marks omitted).

   C.  **Ahmed's <u>Prima Facie</u> Case**

   As a North African Arab and an Algeria-born Muslim, Ahmed is a member of a protected class. <u>See</u> 42 U.S.C. § 2000e-2(a)(1) (prohibiting discrimination in employment based on, among other things, national origin, race, and religion).  Further, the parties do not dispute that Ahmed qualified for the open deportation officer's position.  Pl.'s Resp. SOF ¶ 53.  The parties also do not dispute that Ahmed was not promoted and that the vacancies were filled by three white males.  Def.'s SOF ¶ 20.

   Attacking the <u>prima facie</u> showing, Napolitano argues that Ahmed cannot state a <u>prima facie</u> case of discrimination because he did not apply for the promotion to deportation officer prior to the time the recommendations were made.  Def.'s Mem. 14.

   The undisputed facts show that the open period to apply for the position was "Wednesday June 10, 2009 to Tuesday, July 28, 2009," and applicants were encouraged to apply early.  Pl.'s

Resp. SOF ¶ 10.  On July 13, 2009, the Field Office requested certificates of qualified applicants for the position, and referral certificates were issued for each series and grade advertised.  Def.'s SOF ¶¶ 14, 16.  After reviewing the certificates, on July 27, 2009, Lawler recommended Ciulla, Leniham, and Shepherd for the positions.  Id. ¶ 16.  His supervisor, Martin, concurred in the recommendation and forwarded it to the selecting official.  Id.

Ahmed applied for the position on Tuesday, July 28, 2009, at 3:01 PM, which was after the three recommendations were made. Id. ¶ 17.  On August 26, 2009, the Field Office made a second request for certificates of qualified applicants and Ahmed's name appeared on two certificates for GS-09 and GS-11 grades issued on August 31, 2009.  Id. ¶ 19.  Chadbourne did not announce the selection of the promoted individuals until September 8, September 28, and October 5, 2009.  Id. ¶ 20.

These undisputed facts, viewed in the light most favorable to Ahmed, tend to show that the final decision by Chadbourne regarding the promotion was announced (and presumably also made) after Ahmed had applied for the promotion.  The selecting officer had a pool of applicants comprised of the first and the second round of certifications together with the names of the recommended applicants.  Thus, given the minimal burden allocated to Ahmed at this stage, this Court holds that Ahmed has

9

established a prima facie case as to the final selection of
candidates "in order to move on to the real issues in this case."
Garcia v. Bristol-Myers Squibb Co., 535 F.3d 23, 31 (1st Cir.
2008).

Ahmed fails to establish a prima facie case of "indirect
discrimination" – that Lawler and Martin's decision not to
recommend him constitutes discrimination.  The evidence shows
that the recommending officers made the decision to recommend the
three selectees before Ahmed even submitted his resume.  Def.'s
SOF ¶ 16.  After Ahmed submitted his resume, Lawler and Martin
did not make any more recommendations.

In order to establish a prima facie case regarding Lawler
and Martin's failure to recommend him, Ahmed has to show that he
applied for the position and that the recommending officer did
not recommend him.  Ahmed argues that "[e]ven if plaintiff had
not applied for the [deportation officer] promotion at issue, the
defendants knew or should have known of the plaintiff's interest
in the [deportation officer] position because of his several
prior applications."  Pl.'s Opp'n 45.  He cites Mauro v. Southern
New England Telecommunications, Inc., 208 F.3d 384 (2d Cir.
2000).  In Mauro, the court held that "the requirement [to show
that he or she applied for the specific job at issue] does not
apply where . . . the plaintiff indicated to the employer an
interest in being promoted to a particular class of positions,

but was unaware of specific available positions because the employer never posted them." Id. at 387.  The court continued that "[i]n such a situation, requiring the plaintiff to show that he or she applied for the specific jobs at issue would be unrealistic, as an employee by definition cannot apply for a job that he or she does not know exists." Id.

Mauro is thus easily distinguishable from the case at issue because here the job announcement was posted and Ahmed in fact knew about it.  As a result, the Court holds that Ahmed failed to establish a prima facie case of discrimination with regard to the recommending officers.  Consequently, the Court will examine further only the final selection for the deportation officer position, made by the selecting officer.

### D.   Napolitano's Legitimate, Non-Discriminatory Reasons

The burden of production now shifts to Napolitano to come forward with evidence establishing that the adverse employment action - i.e., the failure to promote Ahmed to deportation officer - was taken for a legitimate, non-discriminatory reason.[4] See Tobin v. Liberty Mut. Ins. Co., 433 F.3d 100, 105 (1st Cir. 2005).

---

[4] This burden is one of production, not persuasion.  The burden of proving discrimination remains with the plaintiff at all times.  See Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981).

First, Napolitano argues that the three selectees were early applicants, as urged in the vacancy announcement. Def.'s Mem. 16. While this fact may be true, Napolitano has failed to provide evidence as to when Chadbourne made his decision. Nonetheless, it is undisputed that Chadbourne announced the promotion of the three selectees on September 8, September 28, and October 5, 2009. Pl.'s Resp. SOF ¶ 20. The announcement was made after Ahmed had applied for the position. See Def.'s SOF ¶ 17. Accordingly, the argument that the selectees were early applicants does not constitute a legitimate explanation for the non-selection of Ahmed.

Second, Napolitano contends that the three selectees were selected based on their educational experience, training, work product, and work history, and in particular, that each of the selectees had worked in the Travel Unit which provides necessary experience and a strong foundation for the deportation officer position. Def.'s Mem. 15. Napolitano submitted three affidavits confirming these selection criteria: one from recommending officer Lawler, see Serafyn Decl., Ex. E, Aff. John J. Lawler 3, ECF No. 30-5, one from recommending officer Martin, see Serafyn Decl., Ex. F, Aff. James Martin 4, ECF No. 30-6, and one from selecting officer Chadbourne, see Serafyn Decl., Ex. G, Aff. Bruce Chadbourne 4-5, ECF No. 30-7. Napolitano also submitted Lawler's deposition transcript, which explained that the three

12

selectees worked under Lawler's supervision and thus that Lawler was familiar with their work and ability to perform their duties. <u>See</u> Serafyn Decl., Ex. I, Lawler Dep. Tr. 118:8-17, ECF No. 30-9. In sum, these affidavits suggest that the selectees were selected because of their qualifications.

Because "the employer has discretion to choose among equally qualified candidates," Napolitano has met the burden of providing a legitimate explanation for Chadbourne's selection. <u>Texas Dep't of Cmty. Affairs</u> v. <u>Burdine</u>, 450 U.S. 248, 259-60 (1981) (holding that it is an error to require the defendant to show that the selected applicants are better qualified than the defendant). This Court holds that Napolitano has produced evidence "which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of" its decision not to promote Ahmed to the deportation officer position. <u>St. Mary's Honor Ctr.</u>, 509 U.S. at 507.[5] This holding wipes away the inference of discrimination established in Ahmed's <u>prima facie</u> case, and Ahmed now must show that Napolitano's stated reason is a pretext for discrimination. <u>See</u> <u>Kosereis</u> v. <u>Rhode Island</u>, 331 F.3d 207, 213 (1st Cir. 2003).

---

[5] It must be remembered that Napolitano's burden is one of production only - not persuasion. Evaluating production <u>vel non</u> does not involve fact finding so the directive of <u>Reeves</u>, 580 U.S. at 151, cited in note 3, <u>supra</u>, does not apply. The matter is fully discussed in <u>United States</u> v. <u>Massachusetts</u>, 781 F. Supp. 2d 1 (D. Mass. 2011).

     **E.    Pretext**

     Where, as here, the case comes before the Court on the
employer's motion for summary judgment, the plaintiff's task is
to identify a genuine issue of material fact with respect to
whether the employer's stated reason for the adverse employment
action was a pretext for discrimination.  See Thomas, 183 F.3d at
62.  "[T]he plaintiff 'must produce evidence to create a genuine
issue of fact with respect to two points: whether the employer's
articulated reason for its adverse action was a pretext and
whether the real reason was . . . discrimination.'"  Quinones,
436 F.3d at 289-90 (quoting Thomas, 183 F.3d at 62).  "Even in
employment discrimination cases 'where elusive concepts such as
motive or intent are at issue,' this standard compels summary
judgment if the non-moving party 'rests merely upon conclusory
allegations, improbable inferences, and unsupported
speculation.'"  Feliciano de la Cruz v. El Conquistador Resort &
Country Club, 218 F.3d 1, 5 (1st Cir. 2000) (quoting Medina-Munoz
v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)).

     In arguing that Napolitano's legitimate non-discriminatory
purpose for hiring the three selectees was pretext, Ahmed
advances several reasons.  First, Ahmed contends that Chadbourne
gave a false statement in his affidavit when he testified that he
did not know Ahmed's race.  Pl.'s Mem. 47.  In contrast, during
his deposition in this matter, Chadbourne testified that a long

                                14

time ago he thought Ahmed was Lebanese because someone in the office said they thought Ahmed was Lebanese.  Decl. Pl.'s Opp'n Def.'s Mot. Summ. J. ("Hudson Decl"),  Ex. P, Chadbourne Dep. Tr. 63:15-64:5 ("Chadbourne Dep. Tr."), ECF No. 41-4.   Ahmed asks the Court to draw an inference of discrimination from these "inconsistencies."  <u>See</u> Pl.'s Opp'n 47.

Ahmed reads too much into Chadbourne's answers.   In Chadbourne's affidavit, when Chadbourne was asked the question: "Do you know the Complainant's Race, Religion and National Origin?," Chadbourne answered: "NO."  Hudson Decl., Ex. K, Aff. Bruce Chadbourne 3, ECF No. 40-1.   In his deposition, Chadbourne was asked the question: "Sir, the name Ahmed, does that in any way cause you to suspect that Mr. Ahmed is a person of Arabic [sic] ancestry?," and he answered: "Yes, I would say so, yeah, the last name.   I thought he was Lebanese.   Someone in the office said they thought that Tahar was Lebanese."  Chadbourne Dep. Tr. 63:15-22.   The affidavit was more precise and focused on a concrete issue - Chadbourne's knowledge of Ahmed's national origin - whereas the deposition question asked about Chadbourne's suspicion.   Thus, no reasonable jury could find that these answers to two different questions could constitute "deceit used to cover one's tracks."  <u>Kouvchinov</u> v. <u>Parametric Tech. Corp.</u>, 537 F.3d 62, 67 (1st Cir. 2008).

It is true that "[a]n employee can establish pretext 'by showing weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions <u>in the employer's proffered legitimate reasons</u> such that a factfinder could infer that the employer did not act for the asserted non-discriminatory reasons.'" <u>Carreras</u> v. <u>Sajo, Garcia & Partners</u>, 596 F.3d 25, 37 (1st Cir. 2010) (quoting <u>Santiago-Ramos</u> v. <u>Centennial P.R. Wireless Corp.</u>, 217 F.3d 46, 56 (1st Cir. 2000)).  Here, however, the "inconsistencies" in Chadbourne's position do not in any way relate to the proffered reasons - the qualification and educational background of the selectees.  Most importantly, even if the Court were to assume that Ahmed has produced evidence of pretext, Ahmed's evidence does not tend to establish a discriminatory purpose.  <u>Fite</u> v. <u>Digital Equip. Corp.</u>, 232 F.3d 3, 7 (1st Cir. 2000) (stating that the "ultimate touchstone" of the <u>McDonnell Douglas</u> analysis is whether the employer's actions were improperly motivated by discrimination).  The inconsistency between the answer in the affidavit and the selected deposition testimony is insufficient as matter of law to establish a discriminatory purpose.  Confusion about a person's national origin does not show a discriminatory animus.  As matter of law, no reasonable jury could infer the contrary.

Second, to show pretext, Ahmed relies on the complaint of Keith Foster ("Foster"), an African American man who also applied

for the same position but was neither recommended nor selected. Pl.'s Resp. SOF ¶ 27.  Ahmed notes that during the Equal Employment Opportunity Commission's investigation of Ahmed's complaint, Chadbourne confirmed that he was unaware of the race, religion, or national origin of the three selectees.  Chadbourne Dep. Tr. 145:12-146:10.  In his affidavit regarding Foster's complaint, however, Chadbourne identified the race of the three selectees.  Hudson Decl., Ex. L, Witness Aff. 4-5, ECF No. 40-2. Again, this argument does not show any pretext or purpose to discriminate.

At this stage, Ahmed must demonstrate that the legitimate reasons offered by the employer were not the true reasons but rather a pretext for discrimination.  Napolitano does not dispute that the three selectees were white males.  Furthermore, Napolitano provides several legitimate reasons, none of which mention the race of the selectees.

Third, Ahmed claims that Lawler and Martin gave false information when they claimed that experience in the Travel Unit was necessary experience for promotion to a deportation officer position.  Pl.'s Mem. at 48.  The Court will not inquire into this argument because the final decision regarding the selection was made by Chadbourne, and only his decision is at issue in this case.  See supra section II.B.  Indeed, the recommending officers Lawler and Martin, who, according to Ahmed, discriminated only

"indirectly," Pl.'s Resp. SOF ¶ 32, prepared their memorandum of recommendation before Ahmed had even applied for the position.

Lastly, Ahmed argues that two Immigration Enforcement agents provided affidavits asserting that there was racial discrimination against minorities in the ICE's Burlington office. Pl.'s Mem. 48.  In the first affidavit, Efrain Perez stated that "[t]here are no minority promotions in the [Burlington] office." Hudson Decl., Ex. S, Witness' Aff. 4, ECF No. 43-1.  Francio Sapia, in his affidavit, asserted that "this is not the first time this sort of thing has happened".  Hudson Decl., Ex. T, Witness' Aff. 4, ECF No. 43-2 (referring to selection based on cronyism and race rather than merit).  Indeed, "evidence of a company's general atmosphere of discrimination 'may be considered <u>along with any other evidence bearing on motive</u> in deciding whether a Title VII plaintiff has met her burden of showing that the defendants' reasons are pretexts.'"  <u>Santiago-Ramos</u>, 217 F.3d at 55 (quoting <u>Sweeney</u> v. <u>Bd. of Trs. of Keene State Coll.</u>, 604 F.2d 106, 113 (1st Cir. 1979)).  Here, the two affidavits are not sufficient to cast doubt on the non-discriminatory reasons offered by Napolitano.  Specifically, even if these two affidavits constitute proof of a general atmosphere of discrimination in the Burlington office, they are not proof of discrimination against Ahmed.  Since Ahmed fails to show any other evidence bearing directly on Chadbourne's motive, evidence

of a discriminatory atmosphere alone does not create a genuine
issue of fact as to pretext.  Sweeney, 604 F.2d at 113 (reasoning
that while general evidence of discrimination by an employer
should be a part of a "totality of the evidence" analysis,
"[p]roof of a general atmosphere of discrimination is not the
equivalent of proof of discrimination against an individual").
As such, the general assertion of discrimination against
minorities in the Burlington office alone is insufficient to show
any pretext in this particular case.

Ahmed's so-called "statistical evidence" is no more
availing.  While statistical evidence may be used to demonstrate
pretext or discriminatory animus, Mesnick v. Gen. Elec. Co., 950
F.2d 816, 824 (1st Cir. 1991), such evidence "rarely suffices to
rebut an employer's legitimate, nondiscriminatory rationale" for
its actions toward an individual employee.  LeBlanc v. Great Am.
Ins. Co., 6 F.3d 836, 848 (1st Cir. 1993); see also Gadson v.
Concord Hosp., 966 F.2d 32, 35 (1st Cir. 1992).  Rather, the
existence of a statistical disparity, while often helpful in
establishing a prima facie case of discrimination, does not by
itself meet an individual's burden of proving that the reasons
given by the employer were pretexts.  Furnco Constr. Co. v.
Waters, 438 U.S. 567, 579-80 (1978).  Moreover, this Court should
inquire "less whether a pattern of discrimination existed and

more how a particular individual was treated, and why." <u>Cumpiano</u> v. <u>Banco Santander P.R.</u>, 902 F.2d 148, 156 (1st Cir. 1990).

Importantly, when an employer offers multiple legitimate, nondiscriminatory reasons for an adverse employment action, a plaintiff generally must offer evidence to counter each reason. <u>See</u> <u>Rathbun</u>, 361 F.3d at 79.  In this case, where Napolitano offered only one non-discriminatory reason (qualification of the selectees), Ahmed has failed to "attack" it.[6]  <u>See</u> <u>United States</u> v. <u>Zannino</u>, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work.").

When an employer claims to have hired or promoted one person over another on the basis of qualifications, the question is not which of the aspirants was better qualified but, rather, whether the employer's stated reasons for selecting one over the other were pretextual.  <u>See</u> <u>Smith</u> v. <u>F.W. Morse & Co.</u>, 76 F.3d 413, 421 (1st Cir. 1996).  In a rare case, the disappointed applicant may be able to prove pretext by showing that she was in fact better qualified than the individual selected.  <u>See</u> <u>Patterson</u> v. <u>McLean</u> <u>Credit Union</u>, 491 U.S. 164, 187-99 (1989).  But this path is an

---

[6] In his complaint Ahmed mentions that his "superior qualifications standing alone are enough to prove pretext." Am. Compl. ¶ 10.  Also, in their Rule 56.1 statement of material facts, the parties provide facts regarding the qualifications of the three selectees and of Ahmed.  In his opposition, however, Ahmed does not make any argument comparing his and the selectees' qualifications.

uphill struggle: in the absence of strong objective evidence
(e.g., test scores), proof of competing qualifications will
seldom be sufficient to create a triable issue of pretext.  <u>See</u>
<u>Millbrook</u> v. <u>IBP, Inc.</u>, 280 F.3d 1169, 1178-79 (7th Cir.), <u>cert.</u>
<u>denied</u>, 537 U.S. 884 (2002); <u>Deines</u> v. <u>Tex. Dep't of Protective &</u>
<u>Regulatory Servs.</u>, 164 F.3d 277, 280-82 (5th Cir. 1999).

Ahmed did not produce "strong objective evidence" showing
that he was better qualified than the three selectees.  With
respect to the HR score[7] given to each applicant, the evidence
shows that Ahmed's HR score was 97, whereas Lenihan's score was
92, Shepherd's was 90, and Ciulla's was 96.  Hudson Dec., Ex. F,
Individual Certificate Audit Forms, ECF No. 38-2.  The Individual
Certificate Audit Forms also show that there were applicants with
scores above 97 who were not selected.  <u>Id.</u>  Overall, the HR
scores do not differ significantly.  Most importantly, Chadbourne
testified that the list of qualified candidates is "not like
other lists where you have to go in ranking order.  You can pick
anybody.  All people in the list are certified as eligible; so

_____

[7] For the position at issue here, applicants were required
to complete an assessment questionnaire. Def.'s Mem. 3.  The
assessment questionnaire consisted of thirty-eight questions,
which are based on job analysis tools.  <u>Id.</u>  These questions were
used to determine whether an applicant met the minimum
qualifications for the position and to assign a rating to each
candidate based on their job-related knowledge, skills, and
abilities.  <u>Id.</u>  An applicant's final rating is a reflection of
his or her overall education, training, and experience for a
particular position.  <u>Id.</u>

you can pick anybody on the list."  Chadbourne Dep. Tr. 25:1-6.
Thus, the slight difference in scores does not cast sufficient
doubt on the legitimacy of Napolitano's proffered reasons for its
employment actions.

    In his response to Napolitano's statement of undisputed
material facts, Ahmed claims that he had more relevant
experience, seniority, and outstanding work appraisal performance
as a whole package than the three selectees.  Pl.'s Resp. SOF
¶ 66.  In arguing that "it was very clear" that he was more
qualified than the three selectees, Ahmed offers his own
deposition transcript maintaining that he trained Lenihan, a
selectee.  Id. ¶ 33.  Since each of the selectees worked in the
Travel Unit, where, as Napolitano claims, employees work directly
with deportation officers, Pl.'s Resp. SOF ¶ 34, Ahmed offers the
deposition testimony of his coworker Foster confirming that
almost no one from the Travel Unit had previously been selected
for deportation officer.  Hudson Decl., Ex. N, Foster Dep. Tr.
119:11-17, ECF No. 41-2.  Further, Ahmed argues that another
selectee, Ciulla, had very limited experience as a police officer
and had worked at the Criminal Alien Program for only a couple of
months.  Pl.'s Resp. SOF ¶ 35.  This evidence, at most, would
establish that the employer committed a mere "business error."
Qualifications are notoriously hard to judge and, in a disparate
treatment case, more must be shown than that the employer made an

unwise personnel decision by promoting "X" ahead of "Y."   See
Keyes v. Sec'y of Navy, 853 F.2d 1016, 1024-26 (1st Cir. 1988).
Ahmed has not provided any evidence whatsoever to suggest that
the employer made a business error because it was motivated by
discrimination or that the business error was a pretext for
discrimination.

In sum, a failure to promote, standing alone, cannot give
rise to an inference of employment discrimination.   Cf. Ruiz v.
Posadas de San Juan Assocs., 124 F.3d 243, 251 (1st Cir. 1997)
(noting that a plaintiff must proffer sufficient evidence to
enable a finding of discriminatory animus); Udo v. Tomes, 54 F.3d
9, 14 (1st Cir. 1995) (holding that a lack of evidence which
would enable a rational jury to find unlawful discrimination
requires summary judgment).   Without more, such a failure may
indicate simply that the employer does not wish to extend an
offer of employment or promotion.   A federal court is not a
super-personnel committee, see Equal Emp't Opportunity Comm'n v.
Amego, 110 F.3d 135, 145 (1st Cir. 1997), nor should this Court
second guess hiring or advancement decisions absent some evidence
of irrationality or discriminatory animus, see Lehman v.
Prudential Ins. Co. of Am., 74 F.3d 323, 329 (1st Cir. 1996);
LeBlanc, 6 F.3d at 846; Petitti v. New Eng. Tel. & Tel. Co., 909
F.2d 28, 31 (1st Cir. 1990).   Ahmed has failed to elucidate
specific facts which would enable a jury to find that the reason

given "is not only a sham, but a sham intended to cover up the employer's real [and unlawful] motive of discrimination." <u>Vélez v. Thermo King de P.R., Inc.</u>, 585 F.3d 441, 452 (1st Cir. 2009) (alteration in original) (quoting <u>Azimi</u> v. <u>Jordan's Meats, Inc.</u>, 456 F.3d 228, 246 (1st Cir. 2006)) (internal quotation marks omitted).  As a result, Ahmed has failed to raise triable issues as to pretext and race, religion, or national origin animus, both issues upon which he bears the ultimate burden of proof. Therefore, a trial on these issues is not warranted.

## III. CONCLUSION

For the reasons discussed above, the Court GRANTS Napolitano's motion for summary judgment, ECF No. 27, and judgment shall enter for her.

**SO ORDERED.**

/s/ William G. Young
WILLIAM G. YOUNG
DISTRICT JUDGE